IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| EAST WEST TEA COMPANY, LLC, fka Golden Temple of Oregon, LLC, an Oregon Limited Liability Company; and and SARBASARANG KAUR KHALSA and EK ONG KAR KAUR KHALSA, as Trustees of the YOGI BHAJAN ADMINISTRATIVE TRUST, | No. 3:11-cv-01358-HZ<br><br>OPINION & ORDER |
| Plaintiffs, | |
| v. | |
| BIBIJI INDERJIT KAUR PURI, an Individual, | |
| Defendant. | |

John F. McGrory, Jr.
Joseph M. VanLeuven
Kevin H. Kono
DAVIS WRIGHT TREMAINE LLP
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201

    Attorneys for Plaintiff East West Tea Company

1 – OPINION & ORDER

Elizabeth Tedesco Milesnick
IDEALEGAL
2240 N. Interstate Avenue, Suite 270
Portland, OR 97227

Maureen A. Sanders
SANDERS & WESTBROOK PC
102 Granite Avenue NW
Albuquerque, NM 87102

Katherine A. Wray
WRAY LAW, PC
102 Granite Avenue NW
Albuquerque, NM 87102

   Attorneys for Plaintiff Trustees of the Yogi Bhajan Administrative Trust

Loren S. Scott
THE SCOTT LAW GROUP
PO Box 70422
Springfield, OR 97475

Surjit P. Soni
M. Danton Richardson
THE SONI LAW FIRM
PO Box 91593
Pasadena, CA 91109

   Attorneys for Defendant Bibiji Inderjit Kaur Puri

HERNÁNDEZ, District Judge:

   This declaratory judgment action involves a longstanding dispute over Plaintiff East West Tea Company's use of the YOGI Trademarks. Plaintiff seeks a declaratory judgment that its use of the YOGI Trademarks pursuant to two license agreements with Plaintiffs Sarbasarang Kaur Khalsa and Ek Ong Kar Kaur Khalsa as Trustees of the Yogi Bhajan Administrative Trust ("Trustees") does not infringe on Defendant Bibiji Inderjit Kaur Puri's trademark rights. Defendant brings a counterclaim for a declaration that the Licenses do not allow for use of the YOGI Trademarks without a license from Defendant and that Plaintiff's use of the YOGI

Trademarks infringes on Defendant's rights. Now, Plaintiff moves for summary judgment on its claim and on Defendant's counterclaim. For the reasons that follow, the Court grants Plaintiff's motion.

## BACKGROUND

Prior to his death in 2004, Yogi Bhajan and Defendant established a living trust (the "Living Trust") to hold their assets, including their intellectual property. Second Am. Compl. ("SAC") ¶¶ 6–7, ECF 199. While Yogi Bhajan was still alive, Plaintiff entered a nonexclusive trademark license with the Living Trust, allowing Plaintiff to use certain trademarks to sell its natural tea products. SAC ¶¶ 8, 9.

When Yogi Bhajan died, both Defendant and the Trustees succeeded to ownership of an undivided 50% interest in the intellectual property held by the Living Trust. SAC ¶ 7. A few years later, the relationship between Plaintiff and Defendant soured. In 2009, Plaintiff stopped paying royalties under the 2004 license, asserting that it owned the YOGI and YOGI TEA Marks (the "Marks") and that the Marks were not covered by the 2004 license. SAC ¶ 10. Defendant disputed this contention, and in 2011 an arbitration panel found that Plaintiff had breached the 2004 license in its use of the Marks and infringed on Defendant's trademark rights. SAC ¶¶ 10–11. In addition to ordering Plaintiff to pay Defendant damages for its use of the Marks, the arbitration panel enjoined Plaintiff from further use of the Marks and required it to convey the registrations of the Marks to Defendant. SAC ¶ 11.

After the panel's ruling, Plaintiff entered into a license agreement (the "Interim License") with the Trustees, "under which the Trustees licensed their interest in and right to use the YOGI Marks to EWTC, commencing on October 1, 2011." SAC ¶ 12; McGrory Decl. Ex. 1 ("ILA"), ECF 270. A year later, Plaintiff and the Trustees replaced the Interim License with a perpetual

license agreement (the "Perpetual License") allowing Plaintiff to continue to use the Marks. SAC ¶ 15. This license remains in effect. SAC ¶ 15; McGrory Decl. Ex. 2 (IPLA).

In 2011—soon after the arbitration panel's first award—Plaintiff filed this action against Defendant seeking to partially vacate the arbitration award and requesting a declaratory judgment regarding the parties' rights and obligations under the Licenses. Compl., ECF 1. One month later, Plaintiff filed an Amended Complaint adding the Trustees as defendants. Am. Compl., ECF 4. In a series of Opinions & Orders between 2013 and 2017, the Court partially vacated the first arbitration award and ordered the arbitrators to hold additional hearings to determine the effect of the Interim License on the arbitration award. Then, in June 2017, the Court confirmed the final arbitration award. The parties appealed these rulings, and the Ninth Circuit reversed on August 19, 2019, ordering the Court to confirm the first arbitration award.

After the case was remanded to this Court, Plaintiff filed a Second Amended Complaint, removing its claim for partial vacatur of the arbitration award and limiting its case to the declaratory judgment claim regarding the parties' rights and obligations under the Licenses. In Plaintiff's remaining declaratory judgment claim, Plaintiff seeks a declaration "that its use of the YOGI Marks pursuant to the Licenses is lawful and (1) does not infringe any of [Defendant's] trademark rights and (2) is permitted notwithstanding the [final arbitration award], which did not consider the impact of the Licenses." SAC ¶ 20. It further seeks a declaration that it has no obligation to account or pay royalties to Defendant for its use of the Marks after it entered into the Interim License agreement. SAC ¶ 21.

Defendant and the Trustees have also filed claims in this case. The Trustees bring a claim for a declaratory judgment. In the first count of this claim, the Trustees seek a declaration that their agreement with Plaintiff is valid and does not violate Defendant's rights. Trustees' Answer

SAC ¶¶ 47–54, ECF 206. In the second count, they seek a declaration that Defendant is not entitled to an accounting or other payment for royalties the Trust has received as part of the license agreement with Plaintiff. Trustees' Answer SAC ¶¶ 55–61. In her counterclaim against Plaintiff, Defendant seeks a declaration that Plaintiff's agreement with the Trustees did not allow use of the YOGI Marks without a license from Defendant. Def.'s Answer SAC ¶¶ 27–31, ECF 221. Defendant also seeks an accounting and damages for the profits Plaintiff has earned through the use of the marks. Def.'s Answer SAC 10.

While the parties were litigating this case, Defendant and the Trustees were involved in litigation in New Mexico and California. In 2012, a state district judge in New Mexico issued a Findings of Fact and Conclusions of Law in a case between the Trustees and Defendant involving the Trustees' fiduciary duties in the division of Yogi Bhajan's estate. McGrory Decl. Exs. 11, 12; *see also Khalsa v. Puri*, 344 P.3d 1036 (N.M. Ct. App. 2014) ("Bibiji claimed that the trustees breached their fiduciary duties to her in a number of ways such that she was entitled to a reallocation of part of Yogi Bhajan's half of the community estate."). In 2015, a judge in the Central District of California entered summary judgment for the Trust in a lawsuit filed by Defendant against the Trust alleging that the Trust's licenses with Plaintiff were unlawful and constituted trademark infringement. McGrory Decl. Exs. 13, 14; *see also Puri v. Yogi Bhajan Admin. Tr.*, No. 2:11-cv-09503 FMO (SHx), 2015 WL 12684464 (C.D. Cal. Oct. 30, 2015).

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

Plaintiff moves for summary judgment on Plaintiff's claim for a declaratory judgment and on Defendant's counterclaim. In moving for summary judgment, Plaintiff makes two arguments. First, Plaintiff argues that it is entitled to summary judgment on the basis of issue preclusion because a New Mexico state court and a California District Court have already

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

Plaintiff moves for summary judgment on Plaintiff's claim for a declaratory judgment and on Defendant's counterclaim. In moving for summary judgment, Plaintiff makes two arguments. First, Plaintiff argues that it is entitled to summary judgment on the basis of issue preclusion because a New Mexico state court and a California District Court have already

decided that the licenses are lawful under federal trademark law. Second, Plaintiff argues that it is entitled to summary judgment on the merits of both claims. The Court agrees with Plaintiff.[1]

## I.    Issue Preclusion

First, Plaintiff argues that it is entitled to summary judgment on the basis of collateral estoppel or issue preclusion.[2] Under the Full Faith and Credit Act, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012) (internal quotation marks omitted). "If the former judgment is a state court judgment, the court applies the res judicata and collateral estoppel rules of the state." *Lodin v. Bank of America, N.A.*, 2014 WL 296927, *2 (N.D. Cal. 2014); *see Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993) ("The Full Faith and Credit Act, 28 U.S.C. § 1738, requires that we give the same preclusive effect to a state-court judgment as another court of that State would give.") (internal quotation marks omitted). "Where a federal court has decided the earlier case, federal law controls the collateral estoppel analysis." *McQuillion v. Schwarenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004) (citing *Trevino v. Gates,* 99 F.3d 911, 923 (9th Cir. 1996)).

///

///

---

[1] Plaintiff's claim seeks a declaration that its use of the marks pursuant to the licenses is "permitted notwithstanding the Final Award." Pl. Mot. 18. Although Plaintiff asserts in a heading that the Court should vacate or permanently stay the judgment in the companion case 3:11-cv-01380-HZ, it does not address the legal impact of the licenses on the Final Award in its briefing. Rather, it notes that it "will be moving in the Case 1380 to vacate or permanently stay the injunction and post-license damages including in the judgment in that case." *Id.* at 18. The Court, therefore, declines to address the interplay between the Final Award and the licenses here.
[2] Defendant does not address the issue of collateral estoppel in her response brief. Defendant also does not dispute the ownership of the Marks.

7 – OPINION & ORDER

A. New Mexico Decision

Under New Mexico law, Defendant is precluded from arguing that the interim license violated Plaintiff's trademark rights. "New Mexico recognizes both defensive and offensive collateral estoppel." *Hyden v. L. Firm of McCormick, Forbes, Caraway & Tabor*, 848 P.2d 1086, 1091 (N.M. Ct. App. 1993). "[T]he doctrine of offensive collateral estoppel may be applied when a plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully regardless of whether plaintiff was privy to the prior action." *Silva v. State*, 745 P.2d 380, 384 (N.M. 1987). Under New Mexico law,

> In order for a court or agency to apply collateral estoppel, the moving party must show that (1) the party to be estopped was a party or privy to the prior proceeding, (2) the cause of action in the present case is different from the cause of action in the prior proceeding, (3) the issue was actually litigated in the prior proceeding, and (4) the issue was necessarily determined in the prior proceeding.

*Rex, Inc. v. Manufactured Hous. Comm. for the State of New Mexico*, 80 P.3d 470, 473 (N.M. Ct. App. 2003). In addition, offensive collateral estoppel requires the court to determine whether "the non-moving party had a full and fair opportunity to litigate the issue in the prior proceeding." *Id.* Collateral estoppel cannot be applied "where the record is insufficient to determine what issues were actually and necessarily determined by prior litigation." *Silva*, 745 P.2d at 384. "[T]he trial court must consider the countervailing equities, including, but not limited to, prior incentive for vigorous defense, inconsistencies, procedural opportunities, . . . inconvenience of forum," the presence of a jury, and the use of alternative or administrative dispute resolution. *Id.*

In the New Mexico proceedings, Bibiji claimed that the Trustees breached their fiduciary duties in their handling of the Trust assets. After years of litigation and a five-day bench trial—which Bibiji attended in its entirety—the court issued lengthy Findings of Fact and Conclusions

8 – OPINION & ORDER

of Law. *Khalsa*, 344 P.3d at 1039; McGrory Decl. Ex. 11 ¶ 9, Ex. 12. As to the intellectual property, the New Mexico court concluded that both the Trust and Bibiji owned a 50% interest in the Yogi Marks and that the Trust and Bibiji are co-owners of the Marks. McGrory Decl. Ex. 11 ¶¶ V, AA. The court determined that the Trustees' decision to enter the Interim License Agreement with EWTC was fiscally prudent. *Id.* at ¶ W. It also held that "[a]n owner does not infringe upon his co-owner rights in a trademark by exercising his own right of use," and "[t]he Trustees were within their rights as co-owners to negotiate and issue the Interim License Agreement." *Id.* at ¶¶ BB–CC. The court also concluded that the Trustees did not breach any duty owed to Bibiji or conspire with EWTC in obtaining the license. *Id.* at ¶¶ DD–GG. Rather, "they created an income stream for [the Trust's] sole residual beneficiary, maintained the active presence of the YB IP in the marketplace, and generated a potential sale for the benefit or all residual beneficiaries." *Id.* at ¶¶ HH–JJ (did not grant a below-market license or violate their fiduciary duties).

 Issue preclusion applies in this case. Defendant was the plaintiff in the New Mexico case, and the claims are different. The issues of trademark infringement by the Trust and the ownership of the marks were actually litigated and necessarily determined in the proceeding. The Court determined that the Trust and Defendant each owned 50% of the Mark and that the Trust did not infringe on the rights of Defendant by licensing the mark to Plaintiff. And Defendant had a full and fair opportunity to litigate this case as she attended a five-day bench trial on the issues resolved by the court's Findings of Fact and Conclusions of Law. Thus, Defendant is estopped from arguing that the Interim License infringes on her property rights as a co-owner of the Marks.

///

B.      Central District of California Decision

Issue preclusion also applies under federal law. Offensive nonmutual issue preclusion "prevents 'a defendant from relitigating the issues which a defendant previously litigated and lost against another plaintiff.'" *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (quoting *Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)). In the Ninth Circuit:

> [O]ffensive nonmutual issue preclusion is appropriate only if (1) there was a full and fair opportunity to litigate the identical issue in the prior action, (2) the issue was actually litigated in the prior action, (3) the issue was decided in a final judgment, and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action.

*Syverson*, 472 F.3d at 1078 (internal citations omitted). Trial courts have "broad discretion to determine when it should be applied." *Parkland Hosiery Co.*, 439 U.S. at 329.

In the California case, Defendant sued the Trustees alleging—among other claims—federal statutory and common law trademark infringement. *Puri v. Yogi Bhajan Admin. Trust*, Case No. CV 11-9503 FMO (SHx), 2015 WL 12684464, *1 (C.D. Cal. Dec. 30, 2015). Defendant alleged that she was the sole owner of the Marks and that the Trust had unlawfully licensed the marks to EWTC pursuant to the Licenses. *Id.* at *10. The district court squarely addressed Defendant's trademark claims, finding that her claims failed as a matter of law. *Id.* at *12. Citing the New Mexico decision, the district court first found that Defendant and the Trust each owned 50% of the Marks and Defendant was estopped from arguing otherwise. *Id.* at *10. The district court also determined that the Trust was within its rights to negotiate and issue the Licenses, the Licenses expressly related to only the Trust's 50% interest, and the Licenses did not affect Bibiji's interest in the Marks. *Id.* at *11. On the trademark infringement claim specifically, it concluded that "a trademark co-owner does not infringe upon his co-owner's

rights by exercising his own right of use." *Id.* (citing cases). Accordingly, it granted summary judgment to the Trust on Bibiji's claim for trademark infringement.

Here, all elements of the four-part test for issue preclusion are met. Defendant was the plaintiff in the California case and had a full and fair opportunity to litigate the issue of whether the licenses were valid under federal trademark law. Defendant brought a claim for trademark infringement against the Trust, which was central to the motion for summary judgment resolved by the district court. And the issue of trademark infringement was actually decided in the California case. The California District Court concluded that a trademark co-owner—such as Defendant and the Trustees here—"does not infringe upon his co-owners rights by exercising his own right of use." *Id.* at *11. The district court also concluded that the licenses only related to the Trust's 50% interest in the marks and, therefore, did not affect Bibiji's interests. *Id.* at *11. Thus, applying offensive issue preclusion to this case, the Court finds Defendant is precluded from relitigating whether the Licenses were valid and whether the Trustees infringed on Defendant's trademark rights.

**II.     Merits**

Plaintiff is also entitled to summary judgment on the merits of Plaintiff's and Defendant's claims for a declaratory judgment. Plaintiff's claim seeks a declaration that "its use of the YOGI Marks pursuant to the Licenses is lawful and (1) does not infringe any of Puri's trademark rights and (2) is permitted notwithstanding the final award, which did not consider the impact of the Licenses. SAC ¶ 20. Defendant's claim seeks a declaration that the Licenses are "insufficient to allow full use of the YOGI Marks without a license from [Defendant]" and that by using the marks without said license, Plaintiff "continues to infringe on [Defendant's] rights" and has "deprived [Defendant] of her rightful royalty for use of the YOGI Marks." Def.'s Answer SAC ¶

11 – OPINION & ORDER

31. Taken together, both parties' claims essentially ask two questions: (1) as a matter of trademark law, are the Licenses valid, and (2) is Plaintiff's current use of the mark without a license from Defendant allowed under the terms of the licenses? The answer to both questions is yes.

    A.    Trademark Law

Few trademark disputes involve co-owners because co-ownership is disfavored in trademark law: "Legal recognition of more than one owner of a single mark is contrary to the basic definition of a mark as identifying and distinguishing a single seller's goods and services." 2 J.T. McCarthy, McCarthy on Trademarks & Unfair Competition § 16:40 (5th ed.). But in the handful of cases where trademark co-ownership is at issue, courts have held that federal claims for dilution and infringement cannot be maintained against co-owners. *See Deriminer v. Kramer*, 406 F.Supp.2d 756 (E.D. Mich. 2005) ("[A]n action between co-owners of a trademark for dilution of that mark under 15 U.S.C. § 1225(c) is not permitted. Like an action for trademark infringement by a co-owner, the claim is best understood as an action for an accounting that arises under state contract law, not under the Lanham Act."); *Piccari v. GTLO Prods.*, LLC, 115 F.Supp.3d 509, 514–16 (E.D. Pa. 2015) (holding that co-owners of the mark with equal and unfettered rights of use cannot sue each other for trademark infringement); *see also* McCarthy § 16:40 ("A Co-owner Cannot be an Infringer of the Mark. When parties are co-owners of a mark, one party cannot sue the other for infringement. A co-owner cannot infringe the mark it owns."). "A trademark co-owner does not infringe upon his co-owners rights by exercising his own right of use." *Puri v. Yogi Bhajan Admin. Tr.*, No. CV 11-9503 FMO (SHX), 2015 WL 12684464, at *11 (C.D. Cal. Oct. 30, 2015). It reasonably follows, then, that a valid licensee of one co-owner of a trademark cannot be liable to another co-owner for infringement. *Cf.*

12 – OPINION & ORDER

*Piantadosi v. Loew's, Inc.*, 137 F.2d 534, 537 (9th Cir. 1943) (citing patent law and finding "a third party licensed to use a copyrighted work by one co-owner incurs [no] liability for infringing the copyright to other co-owners who gave no consent"). Thus, consistent with the decisions of the New Mexico court and the Central District of California, the Court finds that Plaintiff's use of the Marks pursuant to an agreement giving Plaintiff a license for the Trustee's interest in the Marks does not infringe on Defendant's trademark rights.

Citing general principles of property law, Defendant argues that the any use of the Mark is necessarily a use of the whole such that a license of the Trustee's interest amounts to an exclusive license that infringes on Defendant's property rights. Def. Resp. 20–22, ECF 280. But Defendant's argument is inconsistent with federal trademark law, as described above. While joint ownership of trademarks is disfavored because it could lead to consumer confusion, it is not prohibited under federal trademark law, and the Trustees are within their rights as co-owners to license their interest in the Marks to Plaintiff. Their non-exclusive license does not infringe on Defendant's intellectual property rights.[3] Accordingly, the Court finds for Plaintiff on this issue.

B.   Contract Law

Oregon courts follow a three-step inquiry in interpreting the provisions of a contract. *Yogman v. Parrott*, 325 Or. 358, 361, 937 P.2d 1019, 1021 (1997). The first step is to examine the text of the disputed provision, in the context of the document as a whole. *Id*. If the disputed provision is clear, the inquiry ends. *Id*.

> When considering a written contractual provision, the court's first inquiry is what the words of the contract say . . . . To determine that, the court looks at the four corners of a written contract, and considers the contract as a whole with emphasis on the provision or provisions in question. The meaning of disputed text in that

---

[3] Indeed, Defendant has engaged in precisely the same behavior she complains of here in licensing her own 50% interest in the Marks to other entities. *See, e.g.*, McGrory Decl. Ex. 11 ¶ 143 (noting Defendant's license agreement with International Beverage Group).

13 – OPINION & ORDER

context is then determined. In making that determination, the court inquires whether the provision at issue is ambiguous. Whether terms of a contract are ambiguous is a question of law. In the absence of an ambiguity, the court construes the words of a contract as a matter of law.

*Id.* (internal quotation marks omitted) (ellipsis in *Yogman*).

The relevant provisions of the Licenses in this case are not ambiguous. The Licenses grant Plaintiff "an exclusive, perpetual, world wide right and license . . . to the Intellectual Property (to the extent it has such right, title and interest)" and expressly notes that "[t]he Trust currently owns and will continue to own an undivided fifty percent interest in the Intellectual Property." IPLA ¶ 2; *see also* ILA ¶ 1.A (granting Plaintiff "all of the Trust's right, title, and interest"). The Licenses also clarify that they do not affect Defendant's co-ownership in the intellectual property. IPLA ¶ 10(vi) ("It is acknowledged and understood that the YOGI Trademarks are co-owned by the Trust and [Bibiji] and nothing in this Agreement purports, or is intended, to affect Bibiji's co-ownership in any intellectual property. All royalties paid under this Agreement are paid for the use of the Trust's interest in the Intellectual Property."); ILA ¶ 1.E ("Nothing in this agreement purports, or is intended, to affect Bibiji's co-ownership in any intellectual property."). And pursuant to the licenses, Plaintiff was required to offer "substantially the same material terms and conditions of [the] Agreement to Bibiji within thirty (30) days of the Effective Date." IPLA ¶ 10(viii); ILA ¶ 1.D (Plaintiff must "offer substantially the same material terms and conditions of [the] agreement to [Bibiji] which will include a ten (10) day period within which to accept or reject the offer."). In other words, the Licenses unambiguously grant Plaintiff an exclusive license in only the Trust's 50% interest in the Marks and require Plaintiff to offer a license to Defendant on the same terms as the Trustees.

Defendant's arguments to the contrary are unavailing. In order to argue that the Licenses are exclusive and require Plaintiff to obtain a license from Defendant, Defendant cherry picks the

14 – OPINION & ORDER

contracts' language to modify their meaning. For example, Defendant emphasizes the word "exclusive" in the Licenses while omitting the language that follows, which specifies that the Licenses are exclusive *only* as to the Trust's interest in the Mark. Defendant also suggests that additional discovery is required to determine the parties' intent behind the contracts. Def. Resp. 14–17 (arguing the Court needs to order discovery to determine the parties' understanding regarding what Plaintiff could do with the license and whether it needed a license from Defendant). But there is no ambiguity in this case. *Yogman*, 325 Or. at 361 ("If the provision is clear, the [court's] analysis ends. . . . In the absence of an ambiguity, the court construes the words of a contract as a matter of law."). The plain language of the contract does not require Plaintiff to obtain a license from Defendant. It solely required Plaintiff to offer Defendant a license on the same terms as the license it obtained from the Trustees. The undisputed evidence in the record suggests that Plaintiff complied with his requirement. *See* McGrory Decl. Ex. 10 (letter from Plaintiff offering Defendant the same license terms as in the ILA), ¶ 14 (negotiation between Plaintiff and Defendant regarding license terms shortly after Plaintiff and the Trustees entered into the Perpetual License). Accordingly, the Court finds that it is appropriate to grant Plaintiff summary judgment on both claims.[4]

---

[4] Finally, there is one outstanding merits issue involving whether Defendant is entitled to damages or a royalty from Plaintiff for its use of the Marks. Even assuming that this claim for damages is still viable given this Court's conclusion that the Licenses are valid and non-infringing, Defendant has not demonstrated than any accounting is owed from Plaintiff as opposed to their co-owner, the Trustees. *See* Def. Resp. 20-22 (citing cases involving co-owners' duty to account).

The Court also notes that while Defendant has no claim against the Trustees in this case, the Trustees seek a declaratory judgment that they do not owe Defendant an accounting. Trustees' Answer SAC ¶¶ 55–61. This specific issue is not properly before the Court because no party has moved for summary judgment on the Trustees' claim. The Court therefore declines to address it further.

15 – OPINION & ORDER

## CONCLUSION

The Court GRANTS Plaintiff's Motion for Summary Judgment [269]. The Court DENIES as moot Plaintiff's Motion to Compel [278] and Motion for a Protective Order [287].

IT IS SO ORDERED.

DATED:__March 28, 2022_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge